# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| DEBRA LEWIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 6:20-cv-03195-NKL |
| | ) |
| ANDREW SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

Plaintiff Debra Lewis appeals the Commissioner of Social Security's final decision denying her application for disability insurance benefits under Title II of the Social Security Act. Doc. 9. Because the Administrative Law Judge's decision is not supported by substantial evidence, the Court remands for further development of the record.

## I.    Background

Lewis's symptoms began in 2017, and in April of that year she reported to the emergency room with malaise, severe pain, diarrhea, constipation, and syncopal episodes. Tr. 51, 365. She was discharged several days later, diagnosed with fibromyalgia syndrome, lower abdomen pain, syncope, myalgia and arthralgia generalized, and directed to follow up with neurology and rheumatology. Tr. 422-23. Throughout May, June, July, and August 2017 Lewis visited doctors numerous times with complaints of pain, swelling, dizziness, tender points suggestive of fibromyalgia, and other symptoms. Tr. 321, 323, 327, 331, 362, 340.

Lewis alleges she became disabled on August 16, 2017. Tr. 18. In her application, Lewis alleged disability due to fibromyalgia, irritable bowel syndrome, chronic fatigue, chronic pain, back injury, hip injury, brain fog, and insomnia. Tr. 186.

1

Lewis applied for disability insurance benefits on October 3, 2017 and was initially denied on January 9, 2018. Tr. 161-64; 93-94. Lewis requested and attended a hearing on April 18, 2019, and the ALJ issued an unfavorable decision on July 5, 2019. Tr. 15, 43.

The ALJ found Lewis has the following severe impairments: fibromyalgia, chronic pain syndrome, orthostatic syncope, and headaches. Tr. 22. The ALJ concluded Lewis has the RFC "[t]o perform light work . . . except can lift and carry 20 pounds occasionally, up to 10 pounds frequently; stand or walk six hours a day; sit six hours a day; can only occasionally climb, balance, stoop, kneel, crouch, crawl; but never climb ropes, ladders or scaffolds; there would be no exposure to hazardous conditions, such as working around heights or moving machinery; and only occasional exposure to vibration." Tr. 23. Based on the vocational expert's testimony, the ALJ found that Lewis is capable of performing her past relevant work as a medical assistant and office manager. Tr. 27.

The Social Security Administration's Appeals Council denied Lewis' request for review. Tr. 158-160. The ALJ's decision, as the final decision by the Commissioner, is subject to judicial review.

## II.     Legal Standard

The Court must affirm the Commissioner's denial of social security benefits so long as "there was no legal error" and "the findings of fact are supported by substantial evidence on the record as a whole." *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016). "Substantial evidence" is less than a preponderance but enough that a reasonable mind would find it adequate to support the ALJ's conclusion. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The Court must consider evidence that both supports and detracts from the ALJ's decision. *Id.*

## III.    Discussion

### A. Whether the ALJ Failed to Adhere to SSR 12-2P and Properly Assess Fibromyalgia

Lewis's sole argument on appeal is that the ALJ failed to adhere to the guidance in SSR 12-2p by improperly assessing the admittedly severe impairment of fibromyalgia and its effect on Lewis's ability to work. Doc. 9, p. 8. Fibromyalgia is a "complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p. "Fibromyalgia is an elusive diagnosis, its cause or causes are unknown, there's no cure, and, of greatest importance to disability law, its symptoms are entirely subjective." *Tilley v. Astrue*, 580 F.3d 675, 681 (8th Cir. 2009) (internal citations omitted).

SSR 12-2p provides guidance on how to evaluate fibromyalgia in disability claims. Once fibromyalgia is determined to be a severe impairment, the ALJ must:

> evaluate the intensity and persistence of the person's pain or any other symptoms and determine the extent to which the symptoms limit the person's capacity for work. If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications, or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms.

SSR 12-2p. Lewis claims the ALJ erred by failing to apply the guidance in SSR 12-2p in assessing the following: (1) Lewis's RFC, (2) her allegations of limitations and (3) the medical opinions. The Court will address each in turn.

### i. Lewis's RFC

Lewis first argues the ALJ violated SSR 12-2p by "relying too heavily on some normal objective findings" to discount the effects of fibromyalgia on Lewis's ability to function. Doc. 9, p. 9. Lewis contends that the "ALJ failed to appropriately consider the problems with good days and bad days causing unreliability in [her] ability to maintain competitive employment." *Id.*

In determining Lewis's RFC, the ALJ cited to many normal objective findings in the record and stated that "examinations at times noted the *required* tender points for fibromyalgia pursuant to SSR 12-2p." Tr. 25 (emphasis added). The 1990 American College of Rheumatology (ACR) Criteria, one set of criteria for determining if a claimant's fibromyalgia constitutes a severe impairment, include a requirement for tender points. SSR 12-2p. However, the ALJ's reliance on the 1990 ACR Criteria, and specifically the requirement for tender points, in determining Lewis's RFC was misplaced. The regulations do not state that a claimant is required to show at least 11 positive tender points to prove limitations related to fibromyalgia. *See* SSR 12-2p. Instead, once determining fibromyalgia was a severe impairment, the regulations directed the ALJ to "evaluate the intensity and persistence of the person's pain or any other symptoms and determine the extent to which the symptoms limit the person's capacity for work." SSR 12-2p.

SSR 12-2p instructs the ALJ, in evaluating the intensity and persistence of Lewis's pain, to determine whether the objective findings support her allegations. Here, the ALJ stated the "objective findings are not consistent with the claimant's allegations" and pointed to evidence showing "claimant to be in no distress; alert and oriented; with good neck range of motion and no tenderness; normal gait; 5/5 muscle strength; good range of motion of all joints; grossly normal neurological examination; no gross motor deficits; no pedal edema; normal cranial nerves; normal muscle tone." Tr. 24-25. Reliance on the ALJ's interpretation of medical

findings is inappropriate. *See Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (rejecting the ALJ's reliance on his own interpretation of medical findings); *Springer v. Saul*, 2019 WL 4855186 (D.S.D. 2019) (The ALJ may not "'play doctor' or rely on its own interpretation of the meaning of the medical records.") (citations omitted).

Further, the "nature of fibromyalgia itself renders… a brief analysis and over-emphasis upon objective findings inappropriate." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 248 (6th Cir. 2007); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (noting that the hallmark of fibromyalgia is a lack of objective evidence); *Swain v. Commissioner of Social Security*, 297 F.Supp.2d 986, 990 (N.D. Ohio 2003) ("There is no laboratory test for the disease's presence or severity," and "[p]hysical examinations usually yield normal findings in terms of full range of motion, no joint swelling, normal muscle strength, and normal neurological reactions"). The ALJ did not specifically explain how the listed objective findings are inconsistent with Lewis's reports of pain and limitations, which Lewis herself described as "sporadic." Tr. 51; *Moraine v. Social Sec. Admin.*, 695 F.Supp.2d 925, 960 (D. Minn. 2010) (holding that the ALJ failed to explain how normal motor strength and range of motion related in any meaningful way to the claimant's symptoms of fibromyalgia). Many of the records relied on by the ALJ are notes from appointments in which Lewis appeared alert and had good range of motion, but the purpose of the visits were to discuss her ongoing symptomology of pain, fatigue, diarrhea and syncope events. SSR 12-2p ("For a person with [fibromyalgia], we will consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have "bad days and good days.").

Additionally, objective evidence supports Lewis's subjective complaints of pain and other symptoms. For example, in January 2018, Dr. Hayes recorded "tenderness over anterior

5

things, less tender over posterior shoulders, sensitive in these locations." Tr. 1898. Dr. Hayes also stated that "IBS symptoms" were suggestive of her fibromyalgia diagnosis. Tr. 1900; SSR 12-2p (stating that repeated manifestations of IBS are indicative of fibromyalgia); Tr. 1901 (recording "diarrhea and alternating constipation"). In January 2019, Dr. Lorenzo prescribed pain medication for "uncontrolled resistant chronic leg pain." Tr. 1827. The record is replete with objective evidence supporting Lewis's allegations, and the ALJ's finding to the contrary is not supported by substantial evidence. *E.g.*, Tr. 1389 ("Having a fibromyalgia flare up and in lots of pain."); Tr. 1407 (documenting frequent cough and irritable bowel syndrome); Tr. 1159 (diagnosing chronic fatigue); Tr. 1178 (Dr. Lorenzo's February 2018 assessment of chronic persistent cough and chronic persistent diarrhea); Tr. 1236 (Dr. Lorenzo's April 2018 review of systems noting cough, diarrhea, leg pain, and cramping); Tr. 742 (March 2018 review of systems noting "[p]ositive for myalgias").

Where the ALJ rejected a claimant's fibromyalgia symptoms and complaints because they were not "substantiated by objective medical testing" the Eighth Circuit reversed and remanded because the ALJ "misunderstood fibromyalgia" which likewise adversely affected the ALJ's formulation of the claimant's RFC analysis. *Garza v. Barnhart*, 397 F.3d 1087, 1089 (8th Cir. 2005). The Court finds that the ALJ demonstrated a misunderstanding of fibromyalgia by incorrectly applying SSR 12-2p in assessing the RFC. Specifically, the ALJ referenced a requirement for tender points that is not supported by the regulations. Further, the ALJ did not explain how normal objective findings are inconsistent with Lewis's descriptions of the intensity and persistence of her pain, which the Court finds are supported in several instances throughout the record. Tr. 742, 1159, 1178, 1236, 1389, 1407, 1827, 1898, 1900, 1901. As a result, the RFC is not supported by substantial evidence. Because the RFC is not supported by substantial

6

evidence, the ALJ's reliance on the vocational expert's testimony based on that same RFC is similarly flawed. *See Howe v. Astrue*, 499 F.3d 835, 842 (8th Cir. 2007) (finding that "a VE's opinion is relevant only if the ALJ accurately characterizes a claimant's medical conditions in the hypothetical questions posed to the VE"); *Smith v. Shalala*, 31 F.3d 715, 717 (8th Cir. 1994) (finding that "[u]nless the hypothetical question comprehensively describes the limitations on a claimant's ability to function, a [vocational expert] will be unable to accurately assess whether jobs do exist for the claimant"). On remand, the ALJ must evaluate the intensity and persistence of Lewis's pain and other symptoms and determine the extent to which the symptoms limit her capacity for work. SSR 12-2p. This evaluation must include how any normal objective findings are consistent or inconsistent with Lewis's reports of pain and limitations, considering that fibromyalgia is an "elusive diagnosis" which often manifests in inconsistent symptomology. *Tilley*, 580 F.3d at 681. The ALJ must then formulate the RFC and hypothetical questions consistent with that determination.

### ii. Lewis's Allegations of Pain and Other Symptoms

Lewis contends the ALJ improperly discredited her claims of pain and other symptoms. Lewis complained of widespread pain, fatigue, depression, and irritable bowel syndrome, all of which are indicative of fibromyalgia.[1] SSR 12-2p. "[G]iven the nature of fibromyalgia, where

---

[1] Tr. 1280 (reporting "persistent" jaw pain); Tr. 1062 (reporting "jaw pain, still making [it] difficult to eat"); Tr. 1257 (reporting her "jaws are continuing to cause trouble eating and are tender to touch"). In a May 2018 message to Dr. Lorenzo, Lewis stated she was "beyond frustrated with lack of progress due to continued joint, leg pain and other [s]ymptoms, such as chronic cough and jaw pain. At times my pain is unbearable." Tr. 1314; Tr. 1322 ("My pain [is] uncontrollable, my mom took me to the grocery store today and I couldn't even make it walking through the store . . .I have to be able to function."); Tr. 741 (Lewis describing "sharp electric pains that goes through my body randomly"); Tr. 1470 (Lewis stating that when her blood pressure is low she is "so tired I can't stay awake, my husband has trouble waking me"); Tr. 1236 (Lewis reporting "tiredness lately"); Tr. 1473 (Lewis describing symptoms of "chronic pain, IBS, passing out, migraines, depression and on top of that being unable to drive"); Tr. 1507

7

the subjective pain complaints play an important role in the diagnosis and treatment of the condition, providing justification for discounting a claimant's statements is particularly important." *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 675, 681 (6th Cir. 2009). The ALJ found that Lewis's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Lewis's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 24. SSR 12-2p directs the ALJ to consider "all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms." SSR 12-2p.

As to daily activities, the ALJ found Lewis's daily activities to be "inconsistent with debilitating conditions." Tr. 25. The ALJ based the findings in this section entirely on Lewis's October 2017 function report. *Id.* The ALJ found that Lewis can do some household chores, take care of pets with her husband's help, and handle her own personal care, but sometimes needed help when suffering more. Lewis's function report also states, "it took all day to sweep and mop due to pain, having to rest frequently." Tr. 202. The ALJ found that Lewis can drive independently. Tr. 25. However, the function report also indicated that Lewis rode in a car when going out, and at the April 2019 hearing, Lewis testified she had not driven in a year and that her mother and pastor drove her when Lewis experienced excruciating "shocking sensations." Tr. 54, 58. This testimony is supported by Dr. Lorenzo's note that "the reason for

---

(reporting "severe pain that correlates with the syncope"); Tr. 1164 (Lewis listing her symptoms before a doctor appointment as dizziness/passing out, jaw pain, IBS, muscle cramps/aches, chronic cough, chronic fatigue, migraines, skin sensitivity).

stopping the driving are those unexplained episodes of syncope," Tr. 1279, and a May 2018 message from Susan Parker, RN, stating "[a]s far as driving goes you will be unable to drive for 6 months after your most recent syncopal episode." Tr. 1462. Finally, the ALJ found that Lewis attends church, but she does not attend regularly due to her medical conditions. The ALJ concluded that these activities "are inconsistent with allegations of an inability to work due to disabling medical conditions." Tr. 25.

The Eighth Circuit has held, "in the context of a fibromyalgia case, that the ability to engage in activities such as cooking, cleaning, and hobbies, does not constitute substantial evidence of the ability to engage in substantial gainful activity." *Brosnahan v. Barnhart*, 336 F.3d 671, 677 (8th Cir. 2003); *Kelly v. Callahan*, 133 F.3d 583, 588-89 (8th Cir. 1998). Further, the "most important issue" in a disability determination is whether the claimant has "the ability to do the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *Forehand*, 364 F.3d at 988 (quoting *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998)).

During the hearing, Lewis testified that "[g]oing to the grocery store, that's about all I can do for a half an hour, you know, to get the essentials. And I'm done in, you know, I hurt by the time I'm finished." Tr. 57. In May 2018, Lewis wrote to Dr. Lorenzo stating she was "spending much of my time with my legs up due to being [in] so much pain. I just hope we can find a resolution soon to all of this." Tr. 1316. Further, Lewis is unable to participate in some of the same activities she previously enjoyed, such as regularly attending church and sporting events due to her IBS and pain. Tr. 204; *Kelly*, 133 F.3d at 188 (finding that a claimant's inability to perform the same daily activities once enjoyed supports a finding that daily activities are consistent with complaints of disabling pain). Lewis described her hobbies as sitting on her

9

porch swing reading or watching wildlife. Tr. 204. The ALJ's conclusion that Lewis's daily activities are inconsistent with her complaints of disabling pain is not supported by substantial evidence in the record. *Brosnahan*, 336 F.3d at 677.

Regarding medications or other treatments, the ALJ stated Lewis "received treatment for her severe physical impairments, including routine medication management," but did not explain how this finding impacted the credibility determination. Tr. 25. The record shows Lewis has used and continues to use and experiment with a variety of medications and other remedies in hopes of obtaining relief from her pain and other symptoms. Tr. 1325 (reporting "continuing muscle spasms I'm having in my legs" and that there "are nights I'm unable to sleep, due to the cramps and am back to soaking in a HOT bath to try to get relief") (emphasis in original). The record also reflects that Lewis continued to experience pain despite some of the medications. *E.g.*, Tr. 1389 (noting that Medrol medication "did not help her"); Tr. 1093 (Lewis "takes Imodium frequently without much help" for her IBS); Tr. 1094 (Dr. Lorenzo documenting "chronic right sided jaw pain which is still problematic and has not had improvement with treatments"); Tr. 1177 ("[C]hronic cough persists despite treatment with antibiotic, nasal spray, antihistaminic, PPI and others.").

Finally, regarding the nature and frequency of Lewis's attempts to obtain medical treatment for her symptoms, the record shows that between April 2017 when her symptoms began until April 2019 when the hearing was held Lewis consistently sought medical treatment and advice. *E.g.*, Tr. 323 (Lewis visiting Dr. Lorenzo in June 2017 due to jaw pain and swelling); Tr. 321 (Lewis visiting Dr. Lorenzo again in June 2017 due to cramping, neuropathy symptoms, and fatigue); Tr. 265 (Lewis visiting Dr. Hayes in September 2017 due to pain); Tr. 1407 (Lewis visiting Dr. Lorenzo in March 2018 due to syncope episodes); Tr. 1038 (Lewis

visiting Nurse Hediger in March 2018 due to headache pain); Tr. 1854 (Lewis visiting Dr. Hayes in June 2018 due to pain and sensitive muscles); Tr. 1031 (Lewis visiting Nurse Hediger in June 2018 due to headache pain, jaw pain, and syncope events). In addition to visits, Lewis often wrote messages offering updates and seeking advice from her doctors. For example, in February 2018 Lewis wrote to Dr. Lorenzo following a syncope event, "if you feel this [is] something urgent enough to be admitted and evaluated I want to do so." Tr. 1133. In July 2018, Lewis wrote, "I am having a severe fibro attack this morning, which is most unbearable. Leg and arm sensitivity, sharp stabbing pain, severe migraine. I soaked in a hot bath, trying to get relief, to no avail. Please advise [any] options available." Tr. 1840. In August she wrote, "I am continuing to struggle with this flare-up. The pain, brain fog, fatigue, etc. have been unbearable the past few weeks, even after the steroids. Please let me know what you recommend." Tr. 1838. In January 2019, Lewis wrote to Dr. Lorenzo, "I had another syncope episode earlier today. I have had an increase in the episodes in the past few weeks and didn't know if I should see you again?" Tr. 1757.

When discussing the testing and treatment Lewis received for her physical impairments, the ALJ found that the "records do not indicate a specific etiology for [the syncopal] episodes" and "tests have not revealed any significant, ongoing abnormalities." Tr. 25. Yet, to support this finding, the ALJ pointed to two messages in which Lewis describes her ongoing syncopal episodes, which no doctor has been able to identify the cause of. Dr. Lorenzo made several referrals for Lewis in hopes of resolving her pain and syncope events, which suggests Lewis was suffering from ongoing abnormalities. The fact that a cause has not been determined does not justify discounting Lewis's reports of her pain, symptoms, and limitations. *Ritchey v. Barnhart*, 2005 WL 6117485, at *12 (E.D. Mo., Sept. 6, 2005) (citing *Forehand v. Barnhart*, 364 F.3d 984,

11

987-88 (8th Cir. 2004)) ("Fibromyalgia is a chronic condition. . . for which no confirming diagnostic tests exist.").

In sum, the ALJ found that Lewis received "routine medication management" but otherwise did not address why Lewis's consistent attempts to obtain medical treatment, or her ongoing pain despite experimenting with various medications, warranted discrediting her subjective complaints of pain, as required by SSR 12-2p. *See Rogers*, 486 F.3d at 675 (holding that the ALJ must provide justification for discounting a claimant's claims of pain in fibromyalgia cases). *Cf. Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (holding that the ALJ may discount a claimant's subjective complaints of pain based on a failure to pursue regular medical treatment). On remand, the ALJ must evaluate Lewis's daily activities, medications or other treatments used to alleviate symptoms, and the nature and frequency of her attempts to obtain medical treatment for symptoms and specifically explain how and why those factors either support or discredit Lewis's subjective complaints. SSR 12-2p.

### iii. Medical Opinions

Lewis further contends that the ALJ failed to properly evaluate the medical opinions. Doc. 9, pp. 16-20. The Commissioner responds that the ALJ found the medical opinions at issue were inconsistent with the record, and appropriately discounted them. Doc. 12, pp. 7-9. When evaluating medical opinions, the ALJ considers the supportability and consistency of the opinion. 20 C.F.R. § 404.1520c. As to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his [] medical opinion(s)" the more persuasive the medical opinions will be. *Id.* § 404.1520c(c)(1). As to consistency, "[t]he more consistent a medical opinion(s) [] is with the evidence from other

12

medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) [] will be." *Id.* § 404.1520c(c)(2).

Notably, of the four medical opinions regarding Lewis's physical abilities provided in the record, the ALJ found all four to be unpersuasive. Tr. 25-27. First, the ALJ found the opinion of state agency medical consultant, Dr. Spence, unpersuasive because additional evidence was added to the record after Dr. Spence's review. Tr. 26. Dr. Spence opined Lewis could perform sedentary work, but the ALJ found the additional evidence showed Lewis was capable of light exertional work. *Id.* Then, the ALJ found the opinions of treating providers Dr. Hayes, Nurse Hediger, and Dr. Lorenzo to be unpersuasive. Tr. 26-27. The Court will address each treating provider in turn.

Dr. Hayes opined that Lewis would need additional, unscheduled breaks every hour for a variable amount of time, would need to use a cane or assistive device, and is incapable of low stress work. Tr. 1917. Dr. Hayes opined that Lewis would require breaks due to her pain and chronic fatigue. *Id.* The ALJ found his opinion "not persuasive" because the opinion was in the form of a checklist with little or no narrative support. Tr. 26. However, the Eighth Circuit instructs that discounting a checklist is only appropriate where the limitations are "never mentioned in [the physician's] numerous records or treatment" nor supported by "any objective testing or reasoning." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001). Here, Dr. Hayes's treatment records are consistent with his opinions about Lewis's limitations, and rejecting the checklist form was improper. *See Reed v. Barnhart*, 399 F.3d 917, 921 (8th Cir. 2005) (explaining that the Eighth Circuit has "never upheld a decision to discount" a checklist on the basis that the form is "deficient *ipso facto*"). The ALJ found Dr. Hayes's "extreme opinion" was "inconsistent with the overall evidence of record which fails to document significant, ongoing

13

abnormalities on physical examination to support a finding that the claimant needs a break every hour for [a] variable amount of time, and is incapable of low stress." Tr. 26. The ALJ's insistence on seeing documented abnormalities shows a misunderstanding of fibromyalgia. *Garza*, 397 F.3d at 1089. Fibromyalgia does not have specific abnormalities or confirming diagnostic tests. *Forehand*, 364 F.3d at 987-88; *Ritchey*, 2005 WL 6117485, at *12.

Nurse Hediger opined that Lewis cannot engage in gainful employment due to her symptoms. The opinion is supported by treatment notes from Lewis's numerous visits with Nurse Hediger between when symptoms began in April 2017 up until the date of the hearing in April 2019. For example, during a March 2018 appointment, Nurse Hediger wrote that Lewis "[c]ontinues to have bilateral jaw pain and passing out spells" and "signs of Fibromyalgia but without any relief, diarrhea etc." Tr. 1038. The ALJ did not reference these treatment notes, nor explain whether, and if so how, they were inconsistent with the record. The ALJ concluded that Nurse Hediger's opinion that Lewis was "unable to perform significant gainful activity" was an issue reserved to the Commissioner and found her opinion not persuasive on that basis. Tr. 26-27.

Dr. Lorenzo saw and communicated with Lewis numerous times about her symptoms and treatment. For example, in January 2018, Dr. Lorenzo documented fatigue, jaw pain, cough, diarrhea, back pain, and myalgias when evaluating Lewis. Tr. 1094. In August 2018, Dr. Lorenzo documented that Lewis's "leg pain has been worsening despite the different treatments provided." Tr. 1532. He assessed chronic severe pain of both lower extremities and chronic migraine. Tr. 1533. Dr. Lorenzo opined that Lewis is currently unable to perform significant gainful activity. The ALJ stated that the "opinion does not identify the claimant's functional limitations or restrictions, or assess the claimant's work-related abilities on a function-by-

14

function basis." Tr. 26. The ALJ continued that "this extreme disabling opinion is inconsistent with the overall evidence of record which fails to document significant, ongoing, debilitating abnormalities on physical examination." *Id.* To support this conclusion, the ALJ pointed to records showing Lewis had "[g]ood range of motion," "no acute distress," and "[m]uscle strength 5/5 throughout." Tr. 268; Tr. 275. However, ALJ did not specifically explain how these physical examination notes are inconsistent with Dr. Lorenzo's opinions, or the record as a whole. *See Combs*, 878 F.3d at 646 (rejecting the ALJ's reliance on his own interpretation of medical findings); *Pate-Fires v. Astrue*, 564 F.3d 935, 946-47 (The ALJ may not "play doctor."); *Finch v. Astrue*, 547 F.3d 933, 938 (8th Cir. 2008) (holding that the ALJ may not substitute his own opinions for those of the physician).

The Commissioner argues that statements on issues reserved to the Commissioner are evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." Doc. 12. The Commissioner contends that in disregarding Dr. Lorenzo and Nurse Hediger's opinions about Lewis's ability to work, the ALJ "was simply adhering to the regulations in finding [their] statements were not persuasive, and no more is required." Doc. 12, p. 7. However, Dr. Lorenzo and Nurse Hediger's opinions about Lewis's inability to work were based upon their numerous visits with Lewis, and treatment notes from those visits. The ALJ did not explain how that relevant objective medical evidence factored into the supportability analysis. 20 C.F.R. § 404.1520c(c)(1). The ALJ similarly did not explain how the similarities between the reports of Doctor Hayes, Doctor Lorenzo, and Nurse Hediger, both among each other and compared with the other evidence in the record, factored into the consistency analysis. 20 C.F.R. § 404.1520c(c)(2). Finally, having found that the ALJ's credibility determination was not supported by substantial evidence, on remand the ALJ must re-evaluate the portion of the

15

RFC assessment of Lewis's chronic pain as support for the doctors' evaluations. *See Ritchey*, 2005 WL 6117485, at *14 (instructing the ALJ to re-evaluate the portion of his RFC assessment of the claimant's chronic pain as support for the treating doctor's evaluation where the ALJ had improperly discounted the claimant's subjective complaints of pain). The ALJ must then re-evaluate the treating doctors' treatment notes and opinions for consistency and supportability, as required by 20 C.F.R. § 404.1520c.

## IV. Conclusion

For the foregoing reasons, the Court reverses and remands for a new administrative hearing and further development of the record consistent with this Order. Lewis asks the Court to award her costs and reasonable attorney's fees. Doc. 9, p. 21. The Court denies the request without prejudice, and Lewis may file a motion for attorney's fees and include an accounting of those fees. 28 U.S.C. § 2412(d)(1)(B).

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: March 12, 2021
Jefferson City, Missouri